UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

G&H DEVELOPMENT, LLC                        CIVIL ACTION NO. 13-0272

VERSUS                                      JUDGE S. MAURICE HICKS, JR.

NANCY PENWELL, ET AL.                       MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Rule 12(b)(6) Motion to Dismiss all of the claims against Defendant Nancy Penwell ("Penwell"), in her individual capacity, on the grounds of qualified immunity. See Record Document 37. Plaintiff G&H Development, LLC ("G&H") opposed the motion. See Record Document 42. For the reasons which follow, the Motion to Dismiss is **GRANTED** and all claims against Penwell are **DISMISSED**.

**I.    BACKGROUND.**

G&H is engaged in the business of developing immovable property by subdividing same into subdivision lots; building necessary streets and other improvements for a subdivision; and developing and selling individual lots, including lots with and without homes constructed thereon. See Record Document 36 (First Supplemental, Amending and Restated Complaint) at ¶ 7. G&H filed the instant lawsuit in early 2013 after Defendants refused to approve (1) its initial application for re-zoning and application for approval of a subdivision plat and (2) its subsequent application for approval of a new subdivision plat (with no accompanying application for re-zoning). See id. at ¶¶ 38-124.

G&H named the following as Defendants: Penwell, in her personal capacity; Benton-Parish Metropolitan Planning Commission; Doyle Adams, Jim Morris, and Fred Rankin, all in their personal capacities; Benton-Parish Metropolitan Board of Adjustment; Bossier Parish Police Jury; and Parish of Bossier. See id. at ¶ 3. G&H sets forth seven

claims for relief:

 I.  Declaratory judgment for violation of G&H's rights to due process and equal protection under the United States Constitution;

 II.  Declaratory judgment for violation of G&H's rights to due process and equal protection under the Louisiana Constitution;

 III.  Declaratory judgment that the planning commission and Bossier Parish have not lawfully established any zoning affecting land in the metropolitan planning area, including the property;

 IV.  Declaratory judgment that G&H is entitled to the issuance of a certificate by the planning commission to the effect that Subdivision Plat 2 is approved;

 V.  Injunctive relief;

 VI.  Damages; and

 VII.  Attorney's fees.

See id. at ¶¶ 135-158. Defendants contend that G&H has also asserted a takings claim under the Fifth Amendment. See Record Document 40. In other motion practice currently before this Court, Defendants have moved for dismissal of G&H's equal protection claims. See Record Document 39. G&H advanced no argument opposing the dismissal of such claims; thus, this Court will consider the equal protection claims abandoned. See Record Document 44.[1]

G&H's claims against Penwell relate to the second application for approval of a subdivision plat, namely her refusal to file G&H's submission with the Benton-Parish Metropolitan Planning Commission. See Record Document 42 at 14-15; Record Document 36 at ¶¶ 57-73. The key factual allegations relevant to this claim are as follows:

---

[1] See Milton v. Boise Cascade, LLC, No. 08-1857, 2011 WL 285091 (W.D. La. Jan. 25, 2011), citing Keenen v. Tejeda, 290 F.3d 252 (5th Cir.2002); Hargrave v. Fibreboard Corp., 710 F.2d 1154 (5th Cir.1983).

59. On November 9, 2012, G&H lawfully submitted its application for approval of Subdivision Plat 2. The application was delivered to defendant, Nancy Penwell. Submitted to Penwell and the Planning Commission were (a) the form application for approval of the plat, (b) the cash sale deed of the Property with the metes and bounds description of the Property attached to it, (c) a notarized list of the names and addresses of all of the persons who owned property within 300 feet of the Property, (d) building restrictions that were proposed to be filed with the subdivision, (e) a map showing the general vicinity of the property, (f) eight (8) copies of the proposed plat, and (g) eight (8) copies of a drainage and utility plan plat map.

60. The application was submitted with a check for the required filing fee in the amount of $3,375.00.

. . .

63. . . . [T]he application for approval of Subdivision Plat 2 was returned by a letter dated December 4, 2012, written by the parish attorney, Mr. Patrick R. Jackson.

. . .

65. In the December 4, 2012, letter, Mr. Jackson identifies Penwell as the "Executive Director" of the Benton-Bossier Parish MPC. G&H has not found any reference in any statute, ordinance or regulation applicable to the Planning Commission which creates a position of an "Executive Director" of the Planning Commission. Neither has G&H found any reference to such a position in the regulations contained in the Planning Commission's Zoning and Land Use booklet.

66. In the December 4, 2012, letter, Mr. Jackson states that Penwell has made an interpretation under the Benton-Bossier Parish Unified Development Code that the application would have to be accompanied by an application for rezoning.

. . .

71. . . . [T]he Planning Commission never even considered G&H's application but returned it calling it an "[a]ttempted submission." In doing so, Penwell, personally, violated G&H's rights to due process. The Planning Commission denied G&H even an opportunity for a hearing on its application.

72. When G&H's application for approval of Subdivision Plat 2 was returned by defendants via Mr. Jackson, there was no communication

>to G&H that the application did not contain any of the materials required to be submitted as part of the application. The only reason stated for the refusal to consider the application for approval of Subdivision Plat 2 was that G&H had not requested that the Property be rezoned and, according to Ms. Penwell, an application for rezoning of the Property could not be filed.[2]

Id. G&H contends that Penwell's conduct violated its procedural due process rights.[3]

## II. LAW AND ANALYSIS.

### A. Rule 12(b)(6) Standard.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007). A plaintiff's obligation

---

[2]In his letter, Mr. Jackson recounted that the previous application for rezoning of the R-A property was denied by the Benton-Parish Metropolitan Planning Commission in August 2012 and the Bossier Parish Police Jury in October 2012. See Record Document 1-2 at 2. The letter further provided:

>It is the administrative determination of the Executive Director of the Benton-Parish MPC that since your application for rezoning may not refiled for 6 months under Sec. 126-1167(2) a., your subdivision application may not be refiled for the same period.

Id.

[3]As noted by Defendants, it is difficult to discern from the allegations in the First Supplemental, Amending and Restated Complaint if G&H alleges a violation of procedural due process, substantive due process, or both. However, a review of the specific factual allegations asserted against Penwell, in her individual/personal capacity, reveals a procedural due process claim. G&H's substantive due process claims appear to be directed toward official governmental bodies, i.e., the Benton-Parish Metropolitan Planning Commission and the Bossier Parish Police Jury.

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2009). However, the plaintiff must plead more than "mere conclusory allegations" and the Court will "not accept as true conclusory allegations or unwarranted deductions of fact." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994).

    **B.    Qualified Immunity.**

Qualified immunity generally shields government officials who perform discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). In evaluating a motion to dismiss based on qualified immunity, a court must first consider whether the facts as alleged show that the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). If so, the court must consider whether the right was sufficiently clear that a reasonable official would

understand that the alleged conduct violates the right. See id. at 202, 121 S.Ct. at 2156.[4] The court need not necessarily conduct the analysis in this order. See Pearson v. Callahan, 555 U.S. 223, 227, 129 S.Ct. 808, 812 (2009).[5] "Bare allegations of malice should not suffice" to overcome qualified immunity. Harlow, 457 U.S. at 817, 102 S. Ct. at 2738.

The burden is on the official claiming qualified immunity to demonstrate his entitlement. See Barker v. Norman, 651 F.2d 1107, 1120 (5th Cir. 1981) (internal citations omitted). "Once pleaded, the showing that a defendant must make to avail himself of the qualified immunity defense varies depending upon the degree of discretion that he exercises in performing his official duties." Id. (internal citations omitted). The official must show that he was acting in his official capacity and within the scope of his discretionary authority. See id. at 1121. In Douthit v. Jones, 619 F.2d 527, 534 (5th Cir. 1980), the Fifth Circuit held:

> When a plaintiff seeks damages under Section 1983 for a discretionary action by an official such as a prison administrator, who must exercise an exceedingly broad range of discretion in performing his official duties, the official should be entitled to qualified immunity upon a showing that he acted within the scope of his authority.

Id. at 534.

---

[4] "The second prong of the qualified immunity test is understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the defendant's conduct was objectively unreasonable in the light of that then clearly established law." Tolan v. Cotton, 713 F.3d 299, 305 (5th Cir. 2013).

[5] "Qualified immunity may be granted without deciding the first prong if plaintiff fails to satisfy the second." Tolan, 713 F.3d at 305 (5th Cir. 2013). "Deciding the second prong first is often advisable; for example, if . . . a constitutional right is claimed to have been violated (first prong), this approach of first addressing the second prong comports with the usual reluctance to decide constitutional questions unnecessarily." Id.

Additionally, the Fifth Circuit "requires that § 1983 plaintiffs meet heightened pleading requirements in cases, such as this, in which an immunity defense can be raised." Jackson v. City of Beaumont Police Dep't, 958 F.2d 616, 620 (5th Cir. 1992). More specifically, the Fifth Circuit held:

> Plaintiffs who invoke § 1983 must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss. . . . Further, plaintiffs must demonstrate prior to discovery that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense.

Id.

### C. Analysis.

Penwell asserts qualified immunity as to the claims against her on the grounds that her "administrative decision under applicable law to not accept [G&H's] Subdivision Application 2 because it was not accompanied by an application for rezoning, and therefore incomplete, was objectively reasonable under established law." Record Document 37-1 at 27. Conversely, G&H argues that "Penwell is not entitled to qualified immunity because (1) she has not satisfied her burden of showing that her actions were within the scope of her authority, and (2) her actions were not objectively reasonable." Record Document 42 at 4.

Scope of Authority

As to the first contention, G&H maintains that Penwell has not satisfied her burden of showing that her actions were within the scope of her authority, namely because her proof as to the basis or scope of her duties "is utterly lacking." Id. at 11-14. G&H first points to Mr. Jackson's letter referring to Penwell as the "Executive Director of the Benton-

Parish MPC." Id. at 12; see also Record Document 1-2. G&H also argues that "no legal basis exists which sets forth Penwell's authority" because she failed to attach or introduce the ordinances outlining her authority in support of her motion, thereby preventing the Court from taking judicial notice of such ordinances. See Record Document 42 at 13-14.

G&H's argument on this point fails, as the Court finds that Penwell has submitted evidence establishing that she was acting in her official capacity and within the scope of her discretionary authority. Chapter 126 (Zoning) of the Bossier Parish Code of Ordinances is included in the record before this Court. See Record Documents 39-3, 40-3 & 48-1. In fact, Record Document 48-1 is a certified copy of the ordinances in their current codified form. Defendants have also requested this Court take judicial notice of the zoning ordinances. See Record Document 48 at 4.

Chapter 126, Section 126-1116 establishes the Office of Metropolitan Planning Commission:

> There is hereby established an office of the metropolitan planning commission. There is hereby vested in such office the duties of administering and enforcing this article, and the power necessary for such administration and enforcement. The zoning administrator shall be the officer in charge of the office of the metropolitan planning commission.

Record Document 48-1 at CD126:124. Sections 126-1117 and 126-1118 set forth the administrative and enforcement duties of the office of the metropolitan planning commission. See id. at CD126:124-CD126:125. Administrative duties include reviewing, receiving, approving, and/or disproving applications. See id. at CD126:124 (Section 126-1117. Enforcement duties include conducting investigations and surveys to determine compliance or noncompliance and issuing written orders requiring compliance. See id. at CD126:125 (Section 126-1118).

Under these ordinances, Penwell is an administrator, specifically, the Zoning Administrator of the Benton-Parish Metropolitan Planning Commission. Additionally, she is the officer in charge of the office under Section 126-1116. Based upon her belief "that an application for any major subdivision of R-A land must be accompanied by an application for rezoning," her refusal to accept G&H's second subdivision application falls within the scope of her duties as Zoning Administrator. Record Document 1-2 at 2. She was specifically tasked with carrying out the duty of administering and enforcing provisions as the officer in charge. See id. at CD126:124-CD126:125.

This Court further notes that G&H did not argue that Penwell's conduct was not within the scope of the authority delegated to the zoning administrator by the aforementioned ordinances. Rather, G&H argued that Penwell's proof as to the scope of her authority was "utterly lacking" because she failed to attach or introduce the ordinances. This alleged deficiency has been cured, as a certified copy of the ordinances are in the record and Penwell has requested this Court take judicial notice of the ordinances. Therefore, this Court finds that the actions of Penwell at issue in this case fell within the scope of her discretionary authority.[6] The Court will now consider whether Penwell's actions were objectively reasonable.

---

[6] It is undisputed that Mr. Jackson's letter refers to Penwell as the Executive Director of the Benton-Parish Metropolitan Planning Commission. See Record Document 1-2. Defendants state that this was an inadvertent error and that Penwell's correct title is Zoning Administrator. See Record Document 37-1 at 16, fn 2. G&H alleges in its complaint that it found no reference in any statute, ordinance or regulation which created a position of an "Executive Director of the Planning Commission." Record Document 36 at ¶ 65. The Court finds that the inadvertent reference to Penwell as the Executive Director rather than Zoning Administrator in Mr. Jackson's letter is immaterial. The error does not change this Court's analysis of whether Penwell's challenged conduct fell within the scope of her discretionary authority.

Objectively Reasonable

Defendants maintain that Penwell did not accept G&H's second subdivision application because, under the applicable zoning ordinances, the zoning for the property was improper. See Record Document 37-1 at 21. Thus, the application should have been accompanied by an application for rezoning before it could be considered by the Benton-Parish Metropolitan Planning Commission. See id. Penwell deemed the application premature because it was not submitted with an application for rezoning. See id. Defendants argue that Penwell's actions were objectively reasonable and should be afforded qualified immunity. See id.

G&H contends that "Penwell's actions were not objectively reasonable because, by refusing to accept G&H's application, she assumed the role of the ultimate decision maker, contrary to the clear law." Record Document 42 at 14. G&H claims that "under these facts, Penwell's actions were objectively unreasonable and all reasonable officials would have realized that such conduct was proscribed by federal laws." Id. at 15.

The Court will focus on the second prong of the qualified immunity analysis,[7] that is, whether G&H's rights were sufficiently clear such that a reasonable official such as Penwell would understand that her alleged conduct violated those rights. More specifically, this Court will consider the "objective legal reasonableness" of Penwell's conduct "examined by reference to clearly established law." Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 279-280 (5th Cir. 1992).

"A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every

---

[7]See supra notes 3 & 4.

reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, — U.S. —, 131 S. Ct. 2074, 2083 (2011). Here, Penwell is entitled to qualified immunity "unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that [the conduct] was proscribed by the federal law on which the suit is founded." Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997). Even if her conduct actually violates G&H's constitutional right, she is entitled to qualified immunity if the conduct was objectively reasonable. See Duckett, 950 F.2d at 280.

In its effort to show that Penwell's conduct was not objectively reasonable under clearly established law, G&H argues that "all reasonable officials would have realized that such conduct was proscribed by federal law." Record Document 42 at 15. The Court does not agree with this conclusory statement, which clearly overlooks the discretionary authority given to Penwell under the applicable zoning ordinances. As discussed previously, Penwell is tasked with the duty of not only administering the local zoning ordinances, but also enforcing compliance such ordinances. Penwell has also directed the Court to Chapter 126, Article III, Section 126-716 of the Bossier Parish Code of Ordinances, which provides:

> (a) *Purpose; intent.* The R-A residence-agriculture districts are composed mainly of unsubdivided lands that are vacant or in agricultural or forestry uses, with some dwelling and accessory uses. The regulations set forth in this section are designed to protect the essentially open character of such districts by prohibiting the establishment of scattered business, industrial and other uses that are unrelated to any general plan of development and that might inhibit the best future urban utilization of the land. It is intended that land in the R-A districts will be reclassified to its appropriate residential or commercial category in accordance with the amendment procedure set forth in this article whenever such land is subdivided into urban building sites.

Id. at CD126:14. The amendment procedure is found in Chapter 126, Article III, Section 126-1161, which states:

> This article, including the zoning map, is based on comprehensive planning studies and is intended to carry out the objective of a sound, stable and desirable development. It is recognized that casual change or amendment to this article would be detrimental to the achievement of such objective, and therefore, it is declared to be the public policy to amend this article only when one or more of the following conditions prevail:
>
> . . .
>
> (4) Subdivision of land. The subdivision or imminent subdivision of open land into urban building sites makes reclassification necessary and desirable.

Id. at CD126:127.

Other than its bare allegations and contention that all reasonable officials would have realized that Penwell's conduct was proscribed by federal law, G&H has come forward with nothing to overcome qualified immunity. See Harlow, 457 U.S. at 817, 102 S. Ct. at 2738 ("Bare allegations of malice should not suffice" to overcome qualified immunity). Penwell relied upon local ordinances and her years of experience in making her administrative determination that G&H's second subdivision application should have been accompanied by a request for rezoning. It is undisputed that the property in question is currently zoned R-A, Residence-Agriculture. Sections 126-716 and 126-1161 clearly demonstrate an intent to reclassify R-A property when it is subdivided into urban building sites. Section 126-1161 specifically provides that reclassification is necessary and desirable.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt v. Millender, — U.S. —, 132 S. Ct. 1235, 1244 (2012). Based on the foregoing, this Court does not believe that Penwell's conduct was objectively unreasonable. Penwell had "breathing room to make reasonable . . .

judgments" and G&H has simply failed to meet its burden to show that all reasonable officials in Penwell's position would have known, as measured by an objective standard, that their conduct violated the law. Penwell is, therefore, entitled to qualified immunity.[8]

### III. CONCLUSION.

Based on the foregoing analysis, the Court finds that Penwell's conduct fell within the scope of her discretionary authority as Zoning Administrator of the Benton-Parish Metropolitan Planning Commission. Additionally, her actions were objectively reasonable and she is entitled to qualified immunity.

Accordingly,

**IT IS ORDERED** the Rule 12(b)(6) Motion to Dismiss (Record Document 37) Penwell, in her individual capacity, be and is hereby **GRANTED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 25th day of March, 2014.

*[signature]*
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[8] The Court's ruling extends to G&H's claims against Penwell under the Louisiana Constitution. First, Louisiana's "due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Progressive Sec. Ins. Co. v. Foster, 97-2985 (La. 4/23/98), 711 So. 2d 675, 688. Additionally, the Louisiana Supreme Court has held that "the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983 require us to recognize a similar immunity for them under any action arising from the state constitution." Moresi v. State Through Dep't of Wildlife & Fisheries, 567 So. 2d 1081, 1093 (La. 1990).