UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| G&H DEVELOPMENT, LLC | CIVIL ACTION NO. 13-0272 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| NANCY PENWELL, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Rule 12(b)(6) Motion to Dismiss the Claims against Defendants Doyle Adams ("Adams"), Jim Morris ("Morris"), and Fred Rankin ("Rankin"), Individually, and the Benton-Parish Metropolitan Board of Adjustment ("the Board of Adjustment" or "the Board") for Judicial Immunity. See Record Document 38. Plaintiff G&H Development, LLC ("G&H") opposed the motion. See Record Document 43. For the reasons which follow, the Motion to Dismiss is **DENIED**.

**I.    BACKGROUND.**

G&H is engaged in the business of developing immovable property by subdividing same into subdivision lots; building necessary streets and other improvements for a subdivision; and developing and selling individual lots, including lots with and without homes constructed thereon. See Record Document 36 (First Supplemental, Amending and Restated Complaint) at ¶ 7. G& H filed the instant lawsuit in early 2013 after Defendants refused to approve (1) its initial application for re-zoning and application for approval of a subdivision plat and (2) its subsequent application for approval of a new subdivision plat (with no accompanying application for re-zoning). See id. at ¶¶ 38-124.

G&H named the following as Defendants: Nancy Penwell ("Penwell"), in her personal capacity; Benton-Parish Metropolitan Planning Commission; Adams, Morris, and Rankin, all in their personal capacities; the Board of Adjustment; Bossier Parish Police Jury;

and Parish of Bossier. See id. at ¶ 3. G&H sets forth seven claims for relief:

I. Declaratory judgment for violation of G&H's rights to due process and equal protection under the United States Constitution;

II. Declaratory judgment for violation of G&H's rights to due process and equal protection under the Louisiana Constitution;

III. Declaratory judgment that the planning commission and Bossier Parish have not lawfully established any zoning affecting land in the metropolitan planning area, including the property;

IV. Declaratory judgment that G&H is entitled to the issuance of a certificate by the planning commission to the effect that Subdivision Plat 2 is approved;

V. Injunctive relief;

VI. Damages; and

VII. Attorney's fees.

See id. at ¶¶ 135-158. Defendants contend that G&H has also asserted a takings claim under the Fifth Amendment. See Record Document 40. G&H has abandoned its equal protection claims. See Record Documents 50 & 51. In an earlier ruling, this Court also dismissed G&H's claims against Penwell, in her individual capacity, on the grounds of qualified immunity. See id.

On November 9, 2012, G&H submitted its application for approval of Subdivision Plat 2 (approval of a new subdivision plat, with no accompanying application for re-zoning). See Record Document 36 at ¶ 59. The submission was given to Penwell, Zoning Administrator of the Benton-Parish Metropolitan Planning Commission. See id. The application was returned by a letter dated December 4, 2012, written by the Parish Attorney, Mr. Patrick R. Jackson. See id. at ¶ 63; Record Document 1-2. In the letter, Mr. Jackson explained that the application was not being considered because G&H had not

requested that the property be rezoned and, according to Penwell, an application for rezoning of the Property could not be filed for six months. See id. at ¶¶ 65-66; Record Document 1-2. Mr. Jackson advised G&H that "should you disagree with this administrative interpretation of applicable ordinances, you may file an appeal with the Benton-Parish Board of Appeals[1] under Sec. 126-1139(a)(1)." Record Document 1-2 at 3.

The key factual allegations relevant to G&H's claims against Adams, Morris, Rankin, and the Board of Adjustment are as follows:

    81.    A hearing was held by the . . . Board . . . on January 17, 2013.

    82.    The Board . . . acted with respect to the appeal, although their lack of authority was brought to the board's attention. The Board . . . did not comment upon whether it had or did not have authority to hear and decide an appeal from decision not to consider a subdivision plat.

    83.    The Board . . . does not exercise any legislative function.

    84.    The Board . . . does not conduct adjudicative hearings or hear matters as a judicial or quasi-judicial forum. . . .

    85.    Under its powers, the Board . . . acts in an executive or administrative capacity to make official policy through appeals from decisions and refusals made by any permit and zoning clerk of the village or parish or any other administrative official in the carrying out or enforcement of any provision of any ordinance enacted under state law concerning zoning within the metropolitan planning area.

    86.    As described herein, the Board . . . in this case refused to allow G&H to submit testimony under oath.

    87.    Instead, the Board . . . acted in an administrative or executive capacity and conducted a public hearing.

    88.    . . . Adams, Morris and Rankin were the only members of the Board . . . who attended the hearing.

---

[1] The Board of Adjustment was incorrectly named in the Complaint as the Benton-Parish Metropolitan Board of Appeals. See Record Document 20.

89. . . . Adams, Morris and Rankin attended the hearing acting under color of state law, i.e., acting under color of the authority of the Police Jury and Bossier Parish, as expressed by Mr. Jackson, to make interpretations of the regulations contained in the Planning Commission's Zoning and Land Use booklet and the ordinances of Bossier Parish.

90. . . . Adams, Morris and Rankin were specifically informed by the aforesaid application that their maintenance of the position of the Planning Commission and/or its administrator would clearly be a violation and denial of G&H's lawful, constitutional and civil rights.

91. Penwell was present at the hearing and sat at the front of the room with . . . Adams, Morris and Rankin.

92. When the hearing commenced, the Board . . . Penwell who recounted from a script certain of the events concerning Subdivision Plat 1 and recited the facts of G&H' s submission of its Subdivision Plat 2 to the Planning Commission by delivery of it to her with the required filing fee.

93. Penwell also stated the position of the Planning Commission citing its "ordinance" (referring to the regulations in the Planning Commission's Zoning and Land Use booklet) and the ordinances of Bossier Parish.

94. Penwell explained that she had determined, after consulting with attorney Neil T. Erwin, that if the application for Subdivision Plat 2 was brought to the Planning Commission's, to direct the applicant to the office of Mr. Patrick Jackson, the parish attorney. Therefore, it is apparent that the decision had been made that the application for Subdivision Plat 2 would not be considered even before it was ever submitted.

95. Penwell also stated that the application was discussed between Mr. Erwin and Mr. Jackson, and they agreed "that the ordinance was interpreted correctly" and returned the application, check and plat to G&H.

96. Penwell also stated that the Board . . . had a "packet" which included "a copy of a letter from long-term members of the Benton-Parish MPC." G&H has never seen the letter Penwell described and is not aware of the letter having been adopted as action of the Planning Commission at any public hearing.

97. Attorney Neil T. Erwin was present with Penwell at the January 17,

      2013, hearing.

98. The regulations contained in the Planning Commission's Zoning and Land Use booklet read that "[t]he chairman or acting chairman may administer oaths." Exhibit A, p. 56. The Board . . . did not require Penwell to make her statements under oath.

99. Counsel for G&H called Penwell as a witness so that G&H could question her and asked that Penwell be placed under oath.

100. Mr. Erwin interrupted and advised Mr. Adams that it was up to him whether or not he wanted to hear testimony. Counsel for G&H pointed out that the rules governing the Board . . . provided for testimony and the ability of any interested party to have testimony transcribed. It was specifically stated to Mr. Adams that the Board's . . . refusal to hear testimony would be a denial of G&H's rights under the state and federal constitutions.

101. Mr. Erwin again interrupted and advised Mr. Adams "absolutely not," and further advised that the Board . . . could first hear G&H's argument and then decide whether to hear testimony. Mr. Erwin added that such (the hearing of testimony) "again would be a first." Each time that Mr. Erwin addressed the Board . . . concerning the issue of Penwell's testifying, he stood behind the Board's . . . table (i.e., on the side on which . . . Adams, Morris and Rankin were seated) along with Penwell.

102. . . . Adams then made a statement that he was not the smartest person in the world, but he was not the dumbest either. . . . Adams stated, "but we do have legal representation, and so, I'm going to follow the advice of our legal counsel [referring to Mr. Erwin] as it related to Penwell testifying." . . . Adams followed precisely the advice given by Mr. Erwin.

103. Mr. Erwin advised and represented Penwell and the Planning Commission at the hearing. Mr. Erwin also advised and acted as attorney for the Board . . . Stated another way, both the "appellee" to the appeal and the Board . . . were advised by the same attorney. Consequently, Adams, Morris and Rankin did not consider the appeal from a position of neutrality, violating G&H's rights to due process and equal protection.

104. Mr. Erwin advised the Board . . . that it would be "a first" for the Board . . . to hear testimony, and, consequently, G&H was denied any opportunity to have Penwell testify as a witness. Penwell had already

been allowed to read scripted statements of fact to the Board . . . without being under oath.)

105. The Board . . ., through . . . Adams, expressly accepted the advice of Mr. Erwin and declined G&H's request to have Penwell testify under oath. The Board . . . did so even though counsel for G&H clearly asserted its position that such was a denial of G&H's rights to due process.

106. It became apparent at the hearing before the Board . . . that . . . Adams, Morris and Rankin had received materials from Penwell or Mr. Erwin or both before the hearing.

107. G&H pointed out that the issue before the Board . . . was not an issue about zoning of the Property. However, because it was apparent that there would be opponents to G&H's appeal who would speak about zoning, G&H addressed the zoning of the Property, to the extent that there may be any zoning applicable to the Property.

108. The Board . . . and . . . Adams, Morris and Rankin were specifically made aware that G&H's Subdivision Plat 2 was for a use by right of the Property.

109. The Board . . . and . . . Adams, Morris and Rankin were even provided a copy of the most recent (rendered January 16, 2013) opinion from the Louisiana Second Circuit Court of Appeal in <u>WRW Properties, LLC versus the City of Shreveport</u>, No. 42,657 (La. App. 2d Cir. 1/16/13), in which the court addressed the "blatant violation of [a] plaintiff corporation's use by right" of property.

110. . . . Adams, Morris and Rankin read (or had the opportunity to read) the <u>WRW Properties</u> decision. In fact, the Board . . . had its (and the Planning Commission's) attorney, Mr. Erwin, present at and throughout the hearing.

. . .

112. Consequently, G&H's rights to subdivide and use its property as proposed in Subdivision Plat 2 as a use by right were established statutory and constitutional rights of which a reasonable person should have known. In fact, . . . Adams, Morris and Rankin did know of these established statutory and constitutional rights of G&H because they were told about and provided evidence confirming the existence of these rights at the January 17, 2013, hearing.

113. At the hearing, G&H demanded that the Board . . . comply with the law (<u>i.e.</u>, the laws applicable to subdivision plats) and cause a certificate to be issued by the Planning Commission to the effect that Subdivision Plat 2 was approved.

114. At the conclusion of G&H's argument, it again insisted that it be allowed to present the testimony of Penwell. Mr. Erwin again spoke and told the Board . . . that such would be "contrary to any of your precedent you've ever had." . . . Adams stated "[W]e're going to pass on that."

115. . . . Adams, Morris and Rankin and the Board . . . did, however, allow for any members of the public who were present to speak to them in opposition to the subdivision which G&H is attempting to develop. In this manner, defendants Adams, Morris and Rankin and the Board of Adjustment received public comment in order that same could be considered in making a politically motivated decision against G&H.

116. The Board . . . and . . . Adams, Morris and Rankin had the opportunity to choose from at least two alternatives: (a) comply with Louisiana law, including any applicable regulations or ordinances, and cause a certificate to be issued by the Planning Commission to the effect that Subdivision Plat 2 was approved; or (b) not comply with Louisiana law, including any applicable regulations or ordinances, but instead uphold Penwell's action, denying G&H's rights under federal law and state law, including G&H's constitutional rights.

117. Counsel for G&H clearly asserted G&H's position that the action of Penwell was arbitrary, capricious and a violation of due process and equal protection. Counsel for G&H clearly asserted that the Board's . . . failure to rule that a certificate of approval of Subdivision Plat 2 be issued would be a violation of state law and a continued denial of due process and equal protection forcing damages upon G&H.

118. The Board . . . and . . . Adams, Morris and Rankin chose to uphold Penwell's action, denying G&H's rights under federal law, including G&H's constitutional rights, and state law. The Board . . . and . . . Adams, Morris and Rankin did so although they were specifically told that such action would be denial of G&H's rights under federal law, including G&H's constitutional rights, and state law.

Record Document 36 at ¶¶ 81-110, 112-118.

## II. LAW AND ANALYSIS.

### A. Rule 12(b)(6) Standard.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2009). However, the plaintiff must plead more than "mere conclusory allegations" and the Court will "not accept as true conclusory allegations or unwarranted deductions of fact." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994).

### B. Absolute Judicial Immunity.

It is well settled that "[j]udicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial discretion." Boyd

v. Biggers, 31 F.3d 279, 284 (5th Cir.1994); see also Krueger v. Reimer, 66 F.3d 75, 76-77 (5th Cir.1995) (per curiam). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359, 98 S .Ct. 1099, 1106 (1978); Brandley v. Keeshan, 64 F.3d 196, 200-201 (5th Cir.1995), cert. denied, 516 U.S. 1129 (1996). Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages. See Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 288 (1991).

While the Supreme Court has been rather conservative in its grants of absolute immunity, it has recognized that certain "'quasi-judicial' agency officials who, irrespective of their title, perform functions essentially similar to those of judges, in a setting similar to that of a court," are fully exempt from liability. O'Neal v. Mississippi Bd. of Nursing, 113 F.3d 62, 65 (5th Cir. 1997), citing Butz v. Economou, 438 U.S. 478, 511-517, 98 S.Ct. 2894, 2913-2916 (1978). Here, Defendants claim that they fall within this "quasi-judicial" category, while G&H feels that its opposition's reliance on O'Neal and Butz is misplaced.

The Fifth Circuit has "held that in order to determine whether a government official is absolutely immune from suit, the proper focus should not be the identity of the party claiming the immunity, but rather his role in the context of the case." O'Neal, 113 F.3d at 65. Stated another way, "immunity attaches to particular official functions, not to particular offices." Id. "If the functions are of a judicial nature then we must weigh the costs and benefits of denying or affording absolute immunity." Id. Courts should look to the following factors, which "are characteristic of the judicial process and are variables to be considered in determining absolute as contrasted with qualified immunity:

1.  the need to assure that the individual can perform his functions

        without harassment or intimidation;

2.     the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

3.     insulation from political influence;

4.     the importance of precedent;

5.     the adversary nature of the process; and

6.     the correctability of error on appeal."

Id. The Fifth Circuit further noted that "[n]o one factor is controlling and the list of considerations is not intended to be exclusive." Id. Additionally, in determining whether an act is "judicial," courts are to look "to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362, 98 S. Ct. 1099, 1107 (1978). The analysis set forth in Stump is often referred to as the "functional test." See Forrester v. White, 484 U.S. 219, 227-29, 108 S.Ct. 538, 544-545(1988); Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir.1995). As noted by the Forrester court, it is "the nature of the function performed, not the identity of the actor who performed it, that inform[s] our immunity analysis." Forrester, 484 U.S. at 229, 108 S.Ct. at 545.

    **C.**     **Analysis.**

    Adams, Morris, and Rankin argue they are entitled to judicial immunity for their judicial acts occurring within the scope of their duties as members of the Board of Adjustment. Likewise, the Board contends it is also entitled to judicial immunity because it is a quasi-judicial body under applicable law and at all times in question was acting as such in its dealings with G&H. Conversely, G&H maintains that Adams, Morris, and Rankin were not acting in a judicial capacity and that the Board itself is not entitled to judicial

immunity under applicable Fifth Circuit precedent.

The Board of Adjustment

In the First Supplemental, Amending and Restated Complaint, G&H identifies the Board of Adjustment as "public body created under the authority of Louisiana Act 558 of 1956." Record Document 36 at ¶ 3(F). Thus, from the face of the complaint, it is clear that G&H has sued the Board as an official governmental entity, not an "individual." Even if there were doubt, G&H clarifies this point in its opposition. See Record Document 43 at 21.

"Defenses such as absolute quasi-judicial immunity . . . are unavailable in official-capacity suits." Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 483 (5th Cir. 2000). In Turner, the Fifth Circuit affirmed the district court's holding that the City of Houma Municipal Fire and Police Civil Service Board was not entitled to absolute quasi-judicial immunity. See id. In affirming, the Fifth Circuit also discussed the confusion surrounding absolute quasi-judicial immunity in the context of official capacity suits:

> Appellants' contention that the Houma Board members should be granted absolute quasi-judicial immunity in their official capacities derives from a misreading of the case law in this circuit. To be fair, this circuit has not been explicit in articulating which "capacity" we have granted absolute quasi-judicial immunity. . . .
>
> The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality. . . .
>
> Courts discuss immunity defenses without clearly articulating to whom and in which capacity those defenses apply, resulting in confusion which has an obvious cause. In any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued, there potentially exists an overlapping cause of action. The official-capacity claims and the claims against the governmental entity essentially merge. Thus, when the suit against the city or state fails for a jurisdictional, procedural, or pleading defect, the remaining immunity discussion by the

courts necessarily concerns only the personal liability of individuals sued in their individual capacities.

. . .

Finally, appellants place great emphasis on the history and doctrinal development of absolute quasi-judicial immunity as it relates to quasi-judicial entities. We take no issue with this argument as it relates to individuals being sued in their individual capacities. Reliance on these cases for official-capacity claims, however, blurs the distinction between the types of liability, and thus immunity defenses, that arise from an individual-capacity suit and the lack of liability and resulting lack of immunity in official-capacity suits.

Id. at 484-486.

Pursuant to Turner, which is binding Fifth Circuit precedent, absolute quasi-judicial immunity is simply unavailable to the Board of Adjustment, as G&H's claims against the Board are claims against the government entity itself. The Motion to Dismiss is, therefore, **DENIED**.

Adams, Morris, and Rankin

The Louisiana Supreme Court has held that a zoning board of appeal and adjustment acts as a quasi-judicial body in hearing appeals. See State ex rel. Bringhurst v. Zoning Bd. of Appeal & Adjustment, 4 So. 2d 820, 821 (1941); see also Matter of St. Tammany Parish Bd. of Adjustments, No. 95-2005 (La. App. 1 Cir. 5/14/96), 676 So. 2d 119, 120 ("A zoning board of adjustment is a quasi-judicial body which cannot appeal from a judgment of a district court rendered on a petition for review of a determination of the board."); Cent. Metairie Civic Ass'n v. Parish of Jefferson, 478 So. 2d 1298, 1301 (La.App. 5 Cir. 1985) ("Boards of Adjustment . . . are clearly quasi-judicial in nature."); River Oaks-Hyman Place Homeowners Civic Ass'n v. City of New Orleans, 281 So. 2d 293, 294 (La.App. 4 Cir. 1973) ("[T]he Zoning Board, being a quasi-judicial body and having no legal

interest in the outcome of the litigation, cannot appeal."). There is also no dispute that the Board of Adjustment was authorized by Act 558 of 1956 of the Louisiana Legislature and created by Ordinance 922 of 1981 of the Bossier Parish Police Jury, subsequently codified as Chapter 126, Article III, Sections 126-1136 through 126-1142 of the Bossier Parish Code of Ordinances. See Record Document 38-1 at 14; Record Document 48-1 (Certified Copy of the Ordinances in their Current Codified Form). Section 126-1139 provides:

    (a)    The board of adjustment shall have the power to:

        (1)    Hear and decide appeals where it is alleged there is an error in any order, requirement, decision or determination made by an administrative official in the enforcement of the provisions of this article.

        (2)    Hear and decide all matters referred to it or upon which it is required to pass pursuant to this article.

        (3)    In passing upon appeals, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this article, vary or modify the application of any of the regulations or provisions of this article relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of this article shall be observed, public safety and welfare secured and substantial justice done.

    (b)    In exercising its powers, the board of adjustment may, in conformity with the provisions of this article, reverse or affirm, wholly or partly, or modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision or determination as ought to be made, and to such end, shall have all of the powers of the officer from whom the appeal is taken.

Record Document 48-1 at CD126:126-CD126:126.

Notwithstanding this "quasi-judicial" label, this Court must consider whether Adams, Morris, and Rankin performed functions essentially similar to those of judges. More particularly, this Court must determine whether their official functions and actions were "of a judicial nature" and consider the six O'Neal characteristics and variables. See O'Neal,

113 F.3d at 65.

Here, the Court finds that G&H's factual allegations relating to its claims against Adams, Morris, and Rankin in their individual capacities are sufficient to survive Defendants' Rule 12(b)(6) attack. G&H has made factual allegations relating to its inability to call Ms. Penwell as a sworn witness; its inability to cross-examine witnesses; Mr. Erwin acting as counsel for both the Benton-Parish Metropolitan Planning Commission (essentially the appellee) and the Board of Adjustment; and *ex parte* communications between members of the Board of Adjustment, Mr. Erwin, and Penwell. See Record Document 36 at ¶¶ 99, 100, 103, 114. It is this Court's belief that these factual allegations, when accepted as true, could potentially undermine the adversarial nature of the process. See O'Neal, 113 F.3d at 65. Moreover, G&H has alleged that the Board of Adjustment's decision was politically motivated and that the hearing was not quasi-judicial in nature, but rather became a public hearing pursuant to the Board's administrative/executive capacity. See Record Document 36 at ¶¶ 87, 115. These factual allegations point to a Board that may not have been insulated from political influence and/or that its members may not have been free from harassment or intimidation. See O'Neal, 113 F.3d at 65.

Pursuant to O'Neal, this Court must weigh the costs and benefits of denying or affording absolute immunity as contrasted with qualified immunity. See id. Based on the factual allegations highlighted above and noting that G&H's factual allegations must be construed liberally, this Court finds that affording absolute immunity is not appropriate at this stage of the litigation. After the benefit of discovery, the parties may revisit the issue of immunity, whether it be absolute or qualified, in the form of a Rule 56 motion for summary judgment. Thus, at this time, Adams, Morris, and Rankin are not entitled to

absolute quasi-judicial immunity for their acts as members of the Board of Adjustment.

## III. CONCLUSION.

Based on the foregoing analysis, the Court finds that absolute quasi-judicial immunity is unavailable to the Board of Adjustment. Additionally, the Court finds that G&H's allegations against Adams, Morris, and Rankin contain sufficient factual matter to survive the Rule 12(b)(6) attack on the grounds of absolute quasi-judicial immunity.

Accordingly,

**IT IS ORDERED** the Rule 12(b)(6) Motion to Dismiss (Record Document 38) filed by the Board of Adjustment, Adams, Morris, and Rankin on the grounds of absolute quasi-judicial immunity be and is hereby **DENIED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26th day of March, 2014.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE