**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| G&H DEVELOPMENT, LLC | CIVIL ACTION NO. 13-0272 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| NANCY PENWELL, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are three dispositive motions (Record Documents 88, 89 & 92) filed by Defendants, the Benton-Parish Metropolitan Board of Adjustment ("Board of Adjustment"), the Benton-Parish Metropolitan Planning Commission ("Benton-Parish MPC"), the Bossier Parish Police Jury ("Police Jury"), and the Parish of Bossier ("the Parish").[1] The motions seek dismissal of Plaintiff G&H Development, LLC's ("G&H") federal substantive due process claims related to Subdivision Plat Applications 1 and 2. Defendants also address G&H's claims under the Louisiana Constitution and its state law claims, including a request for this Court to decline supplemental jurisdiction over any remaining state law claims. G&H has opposed all three motions. See Record Documents 106, 107 & 110.

For the reasons set forth below, the defense motions (Record Documents 88, 89 & 92) are **GRANTED**. G&H's federal and state substantive due process claims relating to the Subdivision Plat Applications are **DISMISSED** and all remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.

---

[1] All three motions are filed as 'Motions for Judgment on the Pleadings (Or in the Alternative, Motion for Summary Judgment)." Record Documents 88, 89 & 92. The Court will decide the motions as Rule 56 Motions for Summary Judgment.

I. **BACKGROUND.**[2]

G&H is the owner of certain property comprising 55 acres, more or less, located in Section 24, Township 20 North, Range 14 West, Bossier Parish, Louisiana, (the "Property") within the jurisdiction of the Benton-Parish MPC. On June 10, 2012, G&H filed an application with the Office of the Benton-Parish MPC (the "Office") for rezoning of the Property from its current classification of Residence-Agriculture R-A ("R-A") to the One-Family Residence R-1 ("R-1") classification (the "Rezoning Application"). This Rezoning Application was filed in order for G&H to subdivide and develop the Property into an urban type development of 154 individual, small lots each containing single family dwellings. At the same time G&H filed the Rezoning Application, G&H also filed with the Office an application for approval of a subdivision plat ("Subdivision Plat Application 1").

Hearings were held by the Benton-Parish MPC on G&H's Rezoning Application and Subdivision Plat Application 1. There was considerable opposition by local residents to rezoning of the Property. (Rec. Doc. 1, ¶¶ 40-46); (Rec. Doc. 36, ¶¶ 42-52). At the public hearing, after G&H's presentation and subsequent discussion and review, the Benton-Parish MPC recommended denial of the Rezoning Application, and therefore and thereafter, declared Subdivision Plat Application 1 moot.

G&H appealed the Benton-Parish MPC's decision recommending denial of G&H's Rezoning Application and Subdivision Plat Application 1 to the Police Jury. On October 3, 2012, a hearing was held by the Police Jury in which members of the public opposed the

---

[2]For the most part, the facts of this case are undisputed and have been drawn from Defendants' Statement of Material Facts (Record Documents 88-1, 89-1, 92-2) and G&H's responses (Record Documents 106-1, 107-1, 110-1). A citation to the record has been provided for any disputed fact.

Rezoning Application. During this hearing, G&H's attorney "stated that he believe[d] that Section 126-1161.4 of the Bossier Parish Code of Ordinances clearly applies to the proposed development in that it provides that the 'subdivision or imminent subdivision of open land into urban building sites makes reclassification necessary and desirable.'" Record Document 86, Exhibit 86 at 6. After G&H's presentation and subsequent discussion and review, the Police Jury upheld the Benton-Parish MPC's recommendation to deny the Rezoning Application. Because the Rezoning Application was denied, the Police Jury considered Subdivision Plat Application 1 moot, as the Police Jury believed the Property was not zoned correctly for a residential subdivision. G&H did not seek state judicial review of the adverse decision as permitted under La. R.S. § 33:4780.40.[3]

On November 9, 2012, Mr. J.D. Gill ("Gill"), on behalf of G&H, and G&H's attorneys attempted to submit a new subdivision application for the Property ("Subdivision Plat Application 2") to the Office. See Record Document 1 at ¶¶ 53-54); Record Document 36 at ¶¶ 59-60. The difference between Subdivision Plat Application 1 and Subdivision Plat Application 2 is the removal of only 11 lots from the original 154 lots. G&H agrees that the

---

[3]Section 4780.40 provides, in pertinent part:

> For the purpose of promoting the health, safety, morals, or general welfare of the community, the governing authorities of parishes . . . or their duly created boards of adjustment are hereby authorized to regulate and restrict the height, number of stories, and size of structures; the percentage of lots that may be occupied; courts and other open spaces; the density of population; and the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes. However, the zoning ordinances enacted by said governing authority and the acts of its zoning commission, board of adjustment, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of police powers, excessive use of the power herein granted, or the denial of the right of due process.

two subdivision plat applications are substantially similar. Defendants contend that because Subdivision Plat Application 2 was not accompanied by an application for rezoning, Ms. Nancy Penwell ("Penwell"), the Zoning Administrator of the Office, did not submit Subdivision Plat Application 2 to the Benton-Parish MPC. Penwell based this decision on an administrative interpretation of the applicable zoning ordinances. See Record Document 86, Exhibit 80 (Affidavit of Nancy Penwell Regarding Subdivision Application 2); see also Record Documents 50 & 51.[4] Penwell instructed G&H and its attorneys to direct any questions to the Parish Attorney, Mr. Patrick Jackson ("Jackson"). It does not appear that G&H and its attorneys consulted Jackson. Rather, they left Subdivision Plat Application 2 on Penwell's desk.[5] Defendants contend that Penwell rejected Subdivision Plat Application 2 and never submitted it to the Benton-Parish MPC. Rather, she forwarded Subdivision Plat Application 2 to Jackson.

Pursuant to a letter dated December 4, 2012, Jackson returned Subdivision Plat Application 2 to G&H based on Penwell's administrative interpretation of the applicable zoning ordinances. In his letter, Jackson informed G&H that it could file an appeal with the Board of Adjustment under Bossier Parish Code of Ordinances, Section 126-1139 (a)(1), if it disagreed with the administrative interpretation of Penwell.

G&H then filed an appeal to the Board of Adjustment. A public hearing of the Board

---

[4]This Court has held that the actions of Penwell in relation to Subdivision Plat Application 2 fell within the scope of her discretionary authority as Zoning Administrator and were objectively reasonable, thus entitling her to qualified immunity. See Record Documents 50 & 51.

[5]G&H argues that leaving Subdivision Plat Application 2 on the desk of Penwell and her forwarding the application to Jackson is the equivalent of submitting the application. See Record Document 107-1 at ¶¶ 15, 19-20.

of Adjustment was set for January 17, 2013. After the public hearing on January 17, 2013, the Board of Adjustment voted to deny the appeal, upholding Penwell's administrative interpretation of the zoning ordinances that Subdivision Plat Application 2 could not be accepted without an accompanying application for rezoning of the Property from R-A to R-1.

G&H subsequently requested an appeal of the Benton-Parish MPC and the Board of Adjustment's denial of a proposed subdivision plat before the Police Jury pursuant to a letter dated January 31, 2013. The Police Jury held a public hearing on March 6, 2013. At the public hearing on March 6, 2013, the Police Jury declined jurisdiction to decide the appeal and advised G&H that its appeal of the decision of the Board of Adjustment was to state district court pursuant to La. R.S. 33:4780.47(A),[6] not the Police Jury. G&H did not seek judicial review in the state court system, but rather filed the instant federal lawsuit on February 4, 2013.

## II.    LAW AND ANALYSIS.

### A.    Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is

---

[6]Section 4780.47(A) provides:

> Any person or persons jointly or severally aggrieved by any decision by the board of adjustment relative to any officer, department, board, or bureau of the parish may present a petition to the district court of the parish in which the property affected is located. Such petition shall be duly verified, set forth that the decision is illegal, in whole or in part, and specify the grounds of the illegality. The petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).[7] "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir.1995).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005). Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in

---

[7]The Court notes that Rule 56 now employs the phrase "genuine dispute," rather than "genuine issue." This 2010 amendment does not alter the Court's analysis, as there was not a substantive change to the summary judgment standard. See F.R.C.P. 56(a) and advisory committee's note.

the light most favorable to the plaintiff. See Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769 (2007). In sum, the motion for summary judgment "should be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553.

### B. Legal Analysis.

"Deprivation by the state of a protected interest in life, liberty, or property is prerequisite to a claim for denial of [substantive] due process." Shelton v. City of Coll. Station, 780 F.2d 475, 479 (5th Cir. 1986). If the plaintiff can establish an infringement upon a protected interest in life, liberty, or property, then he must also demonstrate that the defendant's infringement was arbitrary and capricious. See FM Properties Operating Co. v. City of Austin, 93 F.3d 167, 174 (5th Cir. 1996).[8] Additionally, "when challenges to . . . land-use decisions aspire to constitutional stature, [courts] view those decisions as 'quasi-legislative' in nature, and thus sustainable against a substantive due process challenge if there exists therefor ' any conceivable rational basis.'" Id. "In other words, such government action comports with substantive due process if the action is rationally related to a legitimate government interest." Id. Such government action will be declared unconstitutional only if it "is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Id.

Defendants argue that G&H waived any potential protected interest it may have had

---

[8]In FM Properties, the Fifth Circuit stated that "review of municipal zoning is within the domain of the states, the business of their own legislatures, agencies, and judiciaries, and should seldom be the concern of federal courts." FM Properties, 93 F.3d at 173.

in Subdivision Plat Applications 1 and 2 because it failed to appeal/seek judicial review pursuant to La. R.S. 33:4780.40 and 4780.47(A). Additionally, Defendants contend that G&H did not have a protected property right in approval of Subdivision Plat Applications 1 and 2. For the limited purpose of the instant ruling, this Court will assume there was no waiver and that G&H has established a protected property right. Thus, the Court will proceed to whether Defendants' actions in relation to Subdivision Plat Applications 1 and 2 were arbitrary and capricious and without any conceivable rational basis.

**Federal Substantive Due Process Claim Against the Benton-Parish MPC**

G&H argues that the Benton-Parish MPC "acted arbitrarily and capriciously for two reasons: (1) because the Benton-Parish Metropolitan Planning Commission lacked authority to zone (or rezone) G&H's property, thus giving a G&H a use by right, defendant's failure to approve the subdivision plat was arbitrary and capricious as a matter of law, and (2) because, even if the relevant zoning ordinances were applicable, G&H had a right to subdivide the property without a zoning change, making defendant's denial of the first subdivision plat arbitrary and capricious as a matter of law." Record Document 106. As to G&H's first argument, this Court has previously held that the Benton-Parish MPC had the authority to zone (or rezone) G&H's property. See Record Documents 155 & 156 (emphasis added). G&H's first argument is, therefore, foreclosed. Next, G&H argues that even if the relevant zoning ordinances were applicable, it had a right to subdivide the property without a zoning change, making Defendants' denial of the first subdivision plat arbitrary and capricious as a matter of law.

At the outset, this Court notes that G&H did not address the Benton-Parish MPC's actions with regard to Subdivision Plat Application 2 at all. Thus, the Court need not

address the actions of the Benton-Parish MPC in the context of Subdivision Plat Application 2, as G&H's failure to discuss such issues amounts to abandonment. See Milton v. Boise Cascade, LLC, No. 08–1857, 2011 WL 285091, *2 (W.D.La. Jan. 25, 2011); Hargrave v. Fibreboard Corp., 710 F.2d 1154 (5th Cir.1983); Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir.2002). To address G&H's argument as to Subdivision Plat Application 1, the Court must start with the applicable zoning ordinances.

Bossier Parish Code of Ordinances, Chapter 126, Article I, Section 716 R-A Residence-Agriculture Districts provides:

> (a) *Purpose; intent.* The R-A residence-agriculture districts are composed **mainly of unsubdivided lands** that are vacant or in agricultural or forestry uses, with some dwelling and accessory uses. The regulations set forth in this section are designed to protect the essentially open character of such districts by prohibiting the establishment of scattered business, industrial and other uses that are unrelated to any general plan of development and that might inhibit the best future urban utilization of the land. ***It is intended that land in the R-A districts will be reclassified to its appropriate residential or commercial category in accordance with the amendment procedure set forth in this article whenever such land is subdivided into urban building sites.***
>
> (b) *Permitted uses.* Only the following uses are permitted in R-A districts:
>
>> (1) *Uses by right.* The following uses are permitted, subject to the conditions specified:
>>
>> . . .
>>
>> Dwelling, one-family.
>>
>> . . .
>
> (c) *Building site area.* Except as provided in division 3 of this article, the minimum building site area within the R-A district shall be as follows:
>
>> (1) One-family dwelling, 6,000 square feet.

. . .

Record Document 86, Exhibit 64 at CD126:14 - 126:16 (emphasis added). "Building Site" under Bossier Parish Code of Ordinances, Chapter 126, Article I, Section 671 is defined as follows:

> Building site means the land area occupied, or to be occupied, by a building and its accessory buildings, including such open spaces, yards, minimum area, off-street parking facilities and off-street truck loading facilities as are required by this article. Every building site shall abut upon a street.

Id. at CD126:9. Bossier Parish Code of Ordinances, Chapter 126, Article I, Section 126-1161(4) states as follows:

> Sec. 126-1161. Policy.
>
> This article, including the zoning map, is based on comprehensive planning studies and is intended to carry out the objective of a sound, stable and desirable development. It is recognized that casual change or amendment to this article would be detrimental to the achievement of such objective, and therefore, it is declared to be the public policy to amend this article only when one or more of the following conditions prevail:
>
> . . .
>
> (4) *Subdivision of land.* The subdivision or imminent subdivision of open land into urban building sites **makes reclassification necessary and desirable**.

Id. at CD126:127 (emphasis added).

G&H filed Subdivision Plat Application 1 to be considered in connection with its application to rezone the Property from R-A to R-1. The Benton-Parish MPC deemed Subdivision Plat Application 1 moot. While not clearly articulated in its brief, it appears G&H argues that the Benton-Parish MPC was arbitrary and capricious in deeming Subdivision Plat Application 1 moot.

In a previous ruling, this Court held:

> Sections 126-716 and 126-1161 clearly demonstrate an intent to reclassify R-A property when it is subdivided into urban building sites. Section 126-1161 specifically provides that reclassification is necessary and desirable.

Record Document 50 at 12. During public hearings, G&H's own attorney admitted that he believed that Section 126-1161.4 of the Bossier Parish Code of Ordinances clearly applied to the proposed development, thus reclassification was necessary and desirable. See Record Document 86, Exhibit 86 at 6. Additionally, the summary judgment record establishes that the Benton-Parish MPC has consistently interpreted Section 716 as requiring R-A property to be rezoned before it can be subdivided and developed into a high density, residential development. See id., Exhibit 80 (Affidavit of Penwell).[9] The deposition testimony of Gill also establishes that G&H cannot point this Court to any high density, residential subdivision located in a R-A zoning district. See id., Exhibit 82 (Excerpts of Gill Deposition).

In Roundstone Development, LLC v. City of Natchez, 105 So.3d 317 (Miss. 2013), the Supreme Court of Mississippi interpreted a provision from a City of Natchez ordinance that is identical to Section 716(a). The court held:

> A plausible interpretation of the O-L ordinance is that reclassification could be required prior to the land being subdivided. First, the last sentence states that reclassification is intended whenever an O-L district is subdivided into an urban building site. It does not state that reclassification is required per se, but it provides that reclassification is intended. Further, the phrase whenever such land is subdivided" is ambiguous: It could mean that reclassification should occur after the land has been subdivided, as

---

[9]When an administrative body (such as the governing authority of a town) over a long period of time has placed an interpretation upon a law, under Louisiana law the interpretation of such body is entitled to great weight in the determination of the meaning of the law. See Lieber v. Rust, 388 So.2d 836, 841 (La. App. 2nd Cir. 8/18/80), citing Ouachita Parish School Board v. Ouachita Parish Supervisors Assoc., 362 So.2d 1138 (La. App. 2nd Cir. 8/28/78)).

> Roundstone asserts, but it also could mean prior to or shortly before any subdivision. Second, the ordinance states that "[t]he regulations [of O-L districts] are designed to protect the essentially open character of the districts by prohibiting the establishment of scattered uses that are unrelated to any general plan of development and that might inhibit the best future urban utilization of the land." By requiring reclassification before a large project, the City is able to ensure that the proposed use fits within the City's general plan of development and that it would not inhibit the best future urban utilization of the land.
>
> Local authorities' construction of zoning ordinances is given great weight unless their construction is manifestly unreasonable. We cannot say that the City's interpretation of the ordinance here was manifestly unreasonable. And, under that interpretation, Roundstone's site plan failed to meet the zoning requirements. The City's decision to deny the site plan and require rezoning, therefore, was not improper.

Id. at 321 (internal citations omitted). While not binding, this Court finds the Roundstone case to be particularly persuasive, as it interprets an identical ordinance. Thus, based on the foregoing, this Court simply cannot hold that the Benton-Parish MPC's actions were arbitrary and capricious and without any conceivable rational basis.

Additionally, G&H argues that because Section 716 provides that one-family dwellings are a use by right; because the individual lot sizes of its development meet the 6,000 square foot building site area requirement; and because urban building sites is undefined, its subdivision/development classifies as a use by right. See Record Document 106. While the Court is not persuaded by this argument, it need not ultimately reach this issue because, standing alone, even an alleged misinterpretation of a local zoning ordinance by the Benton-Parish MPC is insufficient to support a substantive due process claim.[10] See FM Properties, 93 F.3d at 174 ("[A] violation of state law is alone insufficient

---

[10] Defendants have filed a dispositive motion on the issue of whether G&H's proposed use in the subdivision applications constitutes a "use by right" under Louisiana law. Record Document 90. The motion deals exclusively with issues of state and local zoning laws.

to state a constitutional claim under the Fourteenth Amendment."). As the Fifth Circuit has explained, "the due process clause does not require a state to implement its own law correctly, nor does the Constitution insist that a local government be right." Id. (internal citations omitted). Accordingly, the Benton-Parish MPC's motion (Record Document 88) seeking dismissal of G&H's federal substantive due process claims relating to Subdivision Plat Applications 1 and 2 is **GRANTED**.

**Federal Substantive Due Process Claim Against the Board of Adjustment**

G&H argues that the Board of Adjustment "acted arbitrarily and capriciously for two reasons: (1) because the Benton-Parish Metropolitan Planning Commission lacked authority to zone (or rezone) G&H's property, thus giving a G&H a use by right, defendant's failure to approve the subdivision plat was arbitrary and capricious as a matter of law, and (2) because, even if the relevant zoning ordinances were applicable, G&H had a right to subdivide the property without a zoning change, making defendant's denial of the *first* subdivision plat arbitrary and capricious as a matter of law." Record Document 107 at 4 (emphasis added). Again, this Court has now held that Defendants had the authority to zone (or rezone) G&H's property. See Record Documents 155 & 156. Thus, G&H's first argument is foreclosed.

G&H's second argument is limited to the first subdivision plat. G&H has admitted that it sets forth no allegations against the Board of Adjustment regarding Subdivision Plat Application 1. See Record Document 89-1 at ¶ 14; Record Document 107-1 at ¶ 14. Accordingly, the Board of Adjustment's motion (Record Document 89) seeking dismissal

---

See id. Depending upon the outcome of G&H's federal substantive due process claims, the Court will consider whether to exercise supplemental jurisdiction over any remaining state law claims, including those addressed in Record Document 90.

of G&H's federal substantive due process claims relating to Subdivision Plat Applications 1 and 2 is **GRANTED**.

**Federal Substantive Due Process Claim Against the Police Jury and the Parish**

G&H argues that the Police Jury "acted arbitrarily and capriciously for two reasons: (1) because the Benton-Parish Metropolitan Planning Commission lacked authority to zone (or rezone) G&H's property, thus giving a G&H a use by right, defendant's failure to approve the subdivision plat was arbitrary and capricious as a matter of law, and (2) because, even if the relevant zoning ordinances were applicable, G&H had a right to subdivide the property without a zoning change, making defendant's denial of the first subdivision plat arbitrary and capricious as a matter of law." Record Document 110 at 3. G&H also argues that its "substantive due process rights relating to Subdivision [Plat] Application 2" have been violated because Defendants have refused to recognize that the application has been approved as a matter of law." Id. at 9.[11]

Again, this Court has held that Defendants had the authority to zone (or rezone) G&H's property. See Record Documents 155 & 156. Thus, G&H's first argument is foreclosed. Next, G&H appears to argue that the Police Jury was arbitrary and capricious in deeming Subdivision Plat Application 1 moot. Again, for the reasons set forth above in relation to the Benton-Parish MPC, this Court simply cannot hold that the Police Jury's actions in deeming Subdivision Plat Application 1 moot were arbitrary and capricious and without any conceivable rational basis.

---

[11]G&H does not specifically identify the Defendant to which this argument applies. However, the argument is advanced in G&H's opposition to the motion filed by the Police Jury and the Parish. As will be discussed *infra*, it appears this argument is more appropriately directed towards the Benton-Parish MPC.

It also appears that G&H contends that the Police Jury's determination that it did not have jurisdiction to hear G&H's appeal from the Board of Adjustment related to Subdivision Plat Application 2 was arbitrary and capricious. The only contact the Police Jury had with Subdivision Plat Application 2 was the March 6, 2013 hearing. See Record Document 86, Exhibit 88 (Minutes). Pursuant to Section 4780.47(A), the Police Jury concluded that it did not have jurisdiction to hear G&H's appeal from the Board of Adjustment, as the statute references "the district court of the parish in which the property affected is located." La. R.S. 33:4780.47(A). The merits of G&H's Subdivision Plat Application 2 were never presented to the Police Jury. Thus, based on these undisputed facts, this Court is not convinced that G&H has met its burden to go beyond the pleadings and designate specific facts showing that there is a genuine dispute for trial relating to the actions of the Police Jury regarding Subdivision Plat Application 2. G&H has failed to demonstrate that the actions of the Police Jury were arbitrary and capricious and without any conceivable rational basis.

Finally, G&H contends that its "substantive due process rights relating to Subdivision Plat Application 2 were violated because Defendants have refused to recognize that the application has been approved as a matter of law. This argument is based on G&H's contention that it "submitted" Subdivision Plat Application 2 to Penwell on November 9, 2012 and the Benton-Parish MPC failed to approve or disapprove the application within 45 days, as required by Act 558. See Record Document 110 at 10-11.[12] Therefore, G&H

---

[12] Article 3, Section 3 of Act 558 provides:

> The Commission shall approve or disapprove a plat within forty-five days after the submission thereof; otherwise such plat shall be deemed to have

argues that the application was deemed to have been approved and asks this Court to recognize that approval.

The Court once again references its previous ruling relating to Penwell, wherein it stated:

> Based upon her belief "that an application for any major subdivision of R-A land must be accompanied by an application for rezoning," *her refusal to accept* G&H's second subdivision application falls within the scope of her duties as Zoning Administrator. Record Document 1-2 at 2. She was specifically tasked with carrying out the duty of administering and enforcing provisions as the officer in charge. See id. at CD126:124-CD126:125.

Record Document 50 at 9 (emphasis added). This Court found Penwell's rejection of Subdivision Plat Application 2 to be objectively reasonable. See id. at 10-13. Based upon Penwell's rejection, this Court believes that Subdivision Plat Application 2 was never properly submitted to the Benton-Parish MPC.

Additionally, Louisiana courts have rejected the "deemed to have been approved" argument advanced by G&H, finding that a public hearing is always necessary before final approval of plats. In Brownlee Dev. Corp. v. Taylor, 438 So.2d 618 (La. Ct. App. 1983), the Louisiana Second Circuit Court of Appeal held that the MPC's approval of a plat without a public hearing was invalid and the court refused to issue a mandamus ordering the city engineer to approve a plat. The court discussed the 45 day period referenced in Act 558:

> The general law provides that a planning commission shall approve a plat within 60 days after the plat is submitted for approval and that no action can be taken without a hearing. La. R.S. 33:113. The special law under which the Bossier MPC was created provides that a plat shall be approved or

---

> been approved and a certificate to that effect shall be issued by the Planning Commission on demand.

Record Document 86, Exhibit 66 at 1031.

disapproved within 45 days after submission and that no plat shall be disapproved without affording a public hearing. Art. 3, § 3. The special law neither requires nor forbids a hearing before a plat can be approved.

Id. at 620. In declining to issue the mandamus, the court held that irrespective of the language in Act 558, the MPC "has the other and additional duty and responsibility to the public to require and advertise a public hearing before approving a subdivision plat." Id. at 621. Thus, Louisiana law requires a public hearing to be held before G&H's Subdivision Plat Application 2 can be deemed approved, regardless of whether 45 days have passed.[13] Accordingly, the motion filed by the Police Jury and the Parish (Record Document 92) seeking dismissal of G&H's federal substantive due process claims relating to Subdivision Plat Applications 1 and 2 is **GRANTED**.

---

[13]In Old Jefferson Civic Ass'n, Inc. v. Planning Comm'n for City of Baton Rouge & E. Baton Rouge Parish, 364 So. 2d 193 (La. Ct. App. 1978), the court of appeal reasoned:

> [W]e concur with the opinion of the trial judge. . . . It is the opinion of this Court that there is a clear and specific duty on the part of the Planning Commission to afford a hearing on a plat submitted to it before acting upon that plat by granting it final approval. The Commission may have discretion to approve or disapprove the plat, but it has no discretion . . . not to hold a hearing on the plat. Plaintiff is entitled to the issuance of a writ of mandamus commanding the Planning Commission, the Council, and the City-Parish to hold public hearings prior to granting final approval to preliminary plats of property in the Third and Fourth Filings of Old Jefferson Subdivision and the proposed Jefferson Park Development. It is strenuously argued by appellants that no hearing is mandated under LSA-R.S. 33:113, since by inactivity final approval is awarded by operation of law. ***The obvious intention of that section providing for approval by operation of law is to prohibit disapproval by the Planning Commission's inactivity.*** . . . The Planning Commission cannot grant approval or disapproval without such a hearing and the trial court has the power to issue a writ of mandamus to compel the Commission to hold such hearings.

Id. at 196 (emphasis added). Based on this rationale, G&H could seek, at most, a mandamus requiring the Benton-Parish MPC to hold a public hearing on Subdivision Plat Application 2.

**Substantive Due Process Claims under the Louisiana Constitution**

Defendants also seek dismissal of G&H's substantive due process claims under the Louisiana Constitution. Because the Louisiana Constitution's guarantee of due process of law "embodies the fundamental fairness guarantees inherent in its federal counterpart," G&H's state substantive due process claims are likewise **DISMISSED**. See Dupree v. Belton, No. 10-1592, 2013 WL 701068, at *6 (W.D. La. Feb. 26, 2013), citing In re C.B., 97-2783 (La. 3/4/98), 708 So.2d 391, 397.

**All Remaining State Law Claims**

All of G&H's federal claims have been dismissed; thus, no federal question remains before this Court. The remaining state law claims relate to purely state and local land use issues. The Court must now exercise its discretion whether to exercise supplemental jurisdiction over G&H's remaining state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection(a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction"). "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." Bass v. Parkwood Hosp., 180 F.3d 234, 246 (5th Cir. 1999). "However, the dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may refile his claims in the appropriate state court." Id. Accordingly, G&H's remaining state law claims are **DISMISSED WITHOUT PREJUDICE** to allow G&H to refile in state court.[14]

---

[14] This dismissal includes the state and local land use issues raised in Defendants' Record Document 90. Thus, Defendants' Motion for Summary Judgment Addressing Claim IV (Record Document 90) is hereby **DENIED AS MOOT**, as the Court declines supplemental jurisdiction over the remaining state law claims and the issue of whether G&H's proposed

**III. CONCLUSION.**

Based on the foregoing analysis, the Court finds that G&H's federal and state substantive due process claims relating to Subdivision Plat Applications 1 and 2 fail, as the actions of Defendants were not arbitrary and capricious and without any conceivable rational basis. Additionally, this Court declines to exercise supplemental jurisdiction over G&H's remaining state law claims.

Accordingly,

**IT IS ORDERED** that Defendants' dispositive motions (Record Documents 88, 89 & 92) seeking dismissal of G&H's federal and state substantive due process claims relating to Subdivision Plat Applications 1 and 2 be and are hereby **GRANTED**.

**IT IS FURTHER ORDERED** that this Court declines to exercise supplemental jurisdiction over G&H's remaining state law claims and such claims be and are hereby **DISMISSED WITHOUT PREJUDICE** to allow G&H to refile in state court.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment Addressing Claim IV (Record Document 90) be and is hereby **DENIED AS MOOT**, as the motion addresses state and local land use issues over which this Court declines supplemental jurisdiction.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 27th day of May, 2015.

*[signature]*
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

use in the subdivision applications constitutes a "use by right" under Louisiana law is more appropriately decided in state court.